UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | | |
|---|---|---|
| IRVIN BRODIE, JR., | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 12-252-DLB |
| | ) | |
| V. | ) | |
| | ) | |
| J. C. HOLLAND, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

**** **** **** ****

Irvin Brodie, Jr., is an individual confined at the Federal Correctional Institution in Manchester, Kentucky. Proceeding without counsel, Brodie has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he contends that a prison disciplinary conviction for possession of a cell phone and assaulting a prison officer violates his rights under the Due Process and Equal Protection Clauses of the Constitution. [R. 1] Brodie has paid the filing fee.

The Court conducts an initial review of habeas corpus petitions. 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). The Court must deny the petition "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates Brodie's petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the petitioner's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Having reviewed the petition,

1

the Court must deny relief because the record establishes that Brodie's disciplinary conviction was entered in conformity with the requirements of the Constitution.

## I.  BACKGROUND

On February 27, 2011, while Brodie was confined at the Federal Correctional Institution in Fort Dix, New Jersey, Officer Reyes issued an Incident Report against him charging him with four prison infractions.  [R. 1-3, p. 1]  The Incident Report states that at 3:00 p.m. on that date Officer Reyes walked into a room in Brodie's unit and saw him lying on his bed using a cell phone.  Reyes states that Brodie hid the cell phone under his hat, and when directed to submit to a pat-down search, Brodie pushed Reyes away and attempted to leave the room.  Reyes states that Brodie then threw the cell phone into the hallway, and refused orders to stop and to submit to being placed in restraints, resulting in a minor altercation.  Once Brodie was subdued, a search of his bed revealed a cell phone ear bud microphone and fifteen bags of loose tobacco.  *Id*.

Before the Unit Disciplinary Committee, Brodie denied that he possessed a cell phone or that any scuffle occurred.  As a result of these events, Brodie was charged with Prohibited Act Codes ("PAC") 108 for possession of a hazardous tool (cell phone); 224 for assaulting any person (minor); 305 for possession of any thing not authorized (tobacco); and 307 for refusing a direct order.  [R. 1-3, p. 1]  In light of the seriousness of the charges, the UDC referred the matter to a Disciplinary Hearing Officer ("DHO") for further hearing.

DHO Boyce held a hearing on these charges on April 6, 2011.  [R. 1-3, p. 4]  During the hearing, Brodie stated that Officer Reyes was lying and that he did not scuffle with the officers.  The DHO also considered written statements from three BOP officers and two inmates; photographs of a cell phone, charger, ear buds, and tobacco; and records of the medical assessment performed on

Brodie and the two officers after the incident.  [R. 1-3, p. 5]

In his April 26, 2011, Report, DHO Boyce set forth verbatim the written statement provided

by Officer Hansen:

> On 2/27/2011 at approximately 3:00PM, I entered room 340 with S.O.S. Reyes to
> locate inmate Brodie #01832-094.  Inmate Brodie was laying in bed 1U talking on
> a cell phone wearing ear buds.  We ordered him to stay on the bed while we cleared
> the room of inmates.  After the room was clear S.O.S. Reyes ordered inmate Brodie
> down from the bed and to put his hands on the wall.  The inmate took the ear buds
> off and put the phone in his hat and climbed down from the bed and put his hands on
> the wall while holding his hat with the cell phone inside it.  I then began to place a
> towel over the doors window so we could conduct a visual search of the inmate.
> After patting the inmate down S.O.S. Reyes ordered the inmate to give him the cell
> phone.  At this time the inmate became belligerent and pushed S.O.S. Reyes and
> myself and forcibly pulled the door away from me and threw the cell phone into the
> hallway.  The inmate continued to push me and pull the door in an attempt to run
> from the room. S.O.S. Reyes then activated my body alarm and we placed the inmate
> on the ground and applied hand restraints.  After responding staff escorted the inmate
> out of the room I searched the inmate's bed and found the cell phone ear buds and
> a plastic bag approximately six inches in diameter filled with fifteen smaller bags of
> tobacco approximately one inch in diameter.

[R. 1-3, p. 6]  DHO Boyce determined that Officer Hanson's statements corroborated those made

by Officer Reyes in the Incident Report and supported a guilty finding on each of the charges.  As

a result, DHO Boyce imposed various sanctions, including the disallowance of a total of 87 days

Good Conduct Time.  [R. 1-3, p. 7]

In his April 26, 2011, Report, DHO Boyce set forth verbatim the written statement provided

Brodie appealed his disciplinary convictions to the Northeast Regional Office on three

grounds.  First, he contended that there was insufficient evidence to conclude that he possessed a

cell phone; that the photograph of the cell phone recovered was a fabrication; that inmates charged

under similar facts were not found guilty of possession of a cell phone; and that there was no

evidence of an altercation between himself and Officers Reyes and Hanson.  [R. 1-1, pp. 1, 2]

Second, Brodie complained that Incident Report initially stated an incorrect Inmate Registration

number for him.  Third, Brodie claimed that he was not made aware that a cell phone could be considered a hazardous tool under PAC 108.  [R. 1-1, p. 2]  The regional office denied the appeal, noting that evidence supported the DHO's finding of guilt; that his correct Inmate Registration number was set forth in Section 3 of the Incident Report; and that the warden advised inmates on December 28, 2009, that possession of a cell phone in prison could result in a charge under PAC 108.  [R. 1-1, pp. 3-4]  The BOP's Central Office denied Brodie's subsequent appeal on the same grounds.  [R. 3-1, p. 1]

In his petition, Brodie alleges that he was sleeping when Officers Reyes and Hanson entered the room and ordered the other inmates to leave it.  Brodie implies that he became concerned when the officers directed him to consent to a pat search after covering the window with a towel, and states that he began to move toward the door so that other inmates could see what was transpiring in the room.  [R. 1-2, p. 2]  Brodie notes that while the officers stated that a scuffle ensued, the Clinical Encounter notes from the medical examination which followed only indicated that Brodie's feet were sore from having to walk to the Health Services Area in his socks.  [R. 1-2, pp. 2-3] Brodie also contends that there was no evidence to establish that the cell phone which was found four hours after the incident was the one which the officers claimed he had thrown down the hallway.  [R. 1-2, pp. 3-4]  Finally, Brodie states that he is a Rastafarian, and alleges that during the hearing DHO Boyce stated "Do all Rastafarians think I'm stupid ... you're the third such person that wants me to take the word of a prisoner over my officer."  Brodie characterizes this as a violation of his equal protection rights.  [R. 1-2, p. 4-5]

## II.  DISCUSSION

When a prison disciplinary board takes action which results in the loss of good time credits

in which a prisoner has a vested liberty interest, the Due Process Clause requires prison officials to observe certain protections for the prisoner.  Specifically, the prisoner is entitled to advanced notice of the charges, the opportunity to present evidence in his or her defense, whether through live testimony or documents, a decision by an impartial decision maker, and a written explanation of the grounds used to determine guilt or innocence of the offense.  *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974).  Further, the findings used as a basis to revoke good time credits must be supported by some evidence in the record.  *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

Brodie's petition makes essentially two arguments challenging his disciplinary convictions. First, he contends that the DHO's decision on the cell phone and assault charges are not supported by "some evidence."  Brodie argues that there was no proof that the cell phone which was later found  was the same one that Officers Reyes and Hanson claim he threw from the room, nor any medical evidence adduced from the medical evaluations after the incident which demonstrates injury from the scuffle that the officers claim transpired.  [R. 1-2, pp. 2-4]

Brodie's arguments are without merit.  As for the charge for possession of a hazardous tool, Brodie has alleged throughout that he never possessed any cell phone.  His argument - that the officers did not establish with physical evidence that the cell phone later found was the same one he threw from the room - fails to address their allegation that they visually observed Brodie in possession of a cell phone from the moment they walked into the room, an allegation based upon their own recollection.  As for the assault charge, Brodie's argument assumes, incorrectly, that any "scuffle" would necessarily have resulted in an injury significant enough to be noted in the Clinical Encounter notes.  In addition, Brodie has not placed into the record either of the two "Staff Injury Assessments" for Reyes and Hansen noted in the DHO's report, nor addressed the statements from

the officers themselves that Brodie engaged them in a scuffle as they tried to prevent him from leaving the room.

But even if Brodie were correct on both points, his arguments would still fail to provide grounds for relief. The Supreme Court has emphasized that the "some evidence" standard is extraordinarily deferential. The Court can not conduct an independent review of the evidence or assess the credibility of witnesses; instead, it may ask only "whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Here, in order to meet that minimal standard, the DHO needed only to point to Officer Reyes's statements that "I observed inmate Brodie reg # 01832-094 actively using a cell phone and placed it under his hat while laying down in his bed" and that "Inmate brodie then pushed me away from him and attempted to leave the room" [R. 1-3, p. 1] and find those statements credible. [R. 1-3, p. 6] These statements provided some evidence to support the DHO's finding of guilt consistent with Brodie's due process rights. While Brodie asks the Court to consider the evidence anew, the Court's ability to grant relief in the nature of habeas does not authorize it to second-guess the findings of prison disciplinary officers, but only to ensure that the disciplinary proceedings complied with the requirements of the Constitution. The evidence before the DHO provided him with ample grounds to find Brodie in violation of the prison rules cited.

Brodie's second ground for relief is predicated upon his allegation that, during the disciplinary hearing, DHO Boyce stated: "Do all Rastafarians think I'm stupid ... you're the third such person that wants me to take the word of a prisoner over my officer." [R. 1-2, p. 4-5] Brodie characterizes this statement as a violation of his equal protection rights, but in order for it to afford a legally-viable basis for relief from a prison disciplinary conviction, the statement must establish

6

that Boyce was not an impartial decision maker. *Wolff*, 418 U.S. at 592; *Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004) ("in order to comport with due process, ... the decision maker must be impartial.")

However, this argument is prematurely brought as Brodie failed to properly present it to the BOP and exhaust the claim administratively. Before a prisoner may seek habeas relief under Section 2241, he must exhaust his administrative remedies within the BOP. *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006). This is necessary both to give the agency the first opportunity to correct its own mistakes and, should the disagreement persist, to provide a reviewing court with a complete and an adequate record to review the agency's actions. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). In order to ensure that the agency has the opportunity to review the *substance* of the action in question, the petitioner is required to have fully and strictly complied with the agency's rules for processing challenges to its actions, such as deadlines and filing requirements. *Woodford*, 548 U.S. at 88.

Here, Brodie challenged his disciplinary convictions at both the regional and national level without success. At the regional level, Brodie challenged the DHO's findings on several grounds, but his claim of partiality based upon his Rastafarianism was not amongst them. [R. 1-1, pp. 1-2] In his appeal to the Central Office, Brodie challenged his convictions on equal protection grounds, although his Form BP-231 makes this argument on only the broadest terms, and no reference is made to Rastafarianism. [R. 3-1, p. 2] However, the form does indicate that several attachments and exhibits, which are not a part of the record, were filed with the appeal form. In denying the appeal, the Central Office stated:

> Because you did not contend that your religious preferences were used in your DHO hearing in your previous requests for administrative remedies, we cannot address that

claim at this level. You will need to raise this concern at the institutional level.

[R. 3-1, p. 1]  The Central Office's response strongly suggests that Brodie did make this argument in his attachments to the Form BP-231.  However, the BOP refused to address the claim on the merits in light of Brodie's failure to raise it before the regional office.

The Central Office was within its rights to refuse to consider Brodie's equal protection argument, raised for the first time at the final level of appeal.  28 C.F.R. § 542.15(b)(2)("An inmate may not raise in an Appeal issues not raised in the lower level filings.")  While in many instances, merely describing the pertinent facts in a grievance provides sufficient notice of the grounds for challenging agency action for purposes of administrative exhaustion, in others, "identification of a particular legal theory is necessary to give such notice" hence, "it must be set forth in the grievance."  *Pruitt v. Holland*, No. 10-CV-111-HRW, 2011 WL 13653, at **4-6 (E.D.Ky. Jan. 4, 2011).  Because Brodie's appeal to the regional office made no mention of this ground for relief and it far from self-evident from the nature of the grievance, the BOP was deprived of the opportunity to address the claim in accordance with its claims processing rules.  Brodie having failed to comply with the BOP's "critical procedural rules" for raising his equal protection claim, it must be denied as unexhausted.  *Woodford*, 548 U.S. at 88.  Accordingly,

**IT IS ORDERED** that:

1.      Brodie's petition for a writ of habeas corpus [R. 1] is **DENIED**.

2.      The Court will enter an appropriate judgment.

3.      This matter is **STRICKEN** from the docket.

This 15th day of May, 2013.



Signed By:

*David L. Bunning*

**United States District Judge**

G:\DATA\Opinions\London\12-252 Order denying petition for writ of habeas corpus.wpd